UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| WIMOLWAN GOLDSMITH, | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CASE NO. _____ |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Defendant | § | |

### COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** WIMOLWAN GOLDSMITH, hereinafter called Plaintiff, complaining of and about the UNITED STATES OF AMERICA, hereinafter called Defendant, and for cause of action would show unto the Court the following:

### INTRODUCTION

1. This is an action against the Defendant United States of America under the Federal Tort Claims Acts, (28 U.S.C. §2671, *et seq*.) and 28 U.S.C. §1346(b)(1), for negligence and professional malpractice in connection with medical care provided to Plaintiff Goldsmith by the Department of Veteran Affairs at the Texas Valley Coastal Bend Health Care System.

2. The claims herein are brought against the Defendant pursuant to the Federal Tort Claims Acts, (28 U.S.C. § 2671, *et seq*.) and 28 U.S.C. § 1346(b)(1), for money damages as compensation for personal injuries caused by the Defendant's negligence.

3. Plaintiff Goldsmith has fully complied with the provisions of 28 U.S.C. § 2675 of

the Federal Tort Claims Act.

4. This suit has been timely filed, in that Plaintiff timely served notice of her claim on both the Department of Veteran Affairs and the United Department of Justice *within less than two years after discovering the incident* forming the basis of this suit.

5. Plaintiff is now filing this Complaint pursuant to 28 U.S.C. § 2401(b) after receiving the Department of Veteran Affair's notice of denial of her administrative claim.

## PARTIES, JURISDICTION, AND VENUE

6. Plaintiff WIMOLWAN GOLDSMITH is, and at all times relevant was, a resident of the city of Pharr, Hidalgo County, Texas.

7. Defendant UNITED STATES OF AMERICA, through its agency, the Department of Veteran Affairs, operates the Texas Valley Coastal Bend Health Care System in Harlingen, Texas.

8. Defendant United States of America, including its directors, officers, operators, administrators, employees, agents, and staff at the Texas Valley Coastal Bend Health Care System are hereinafter collectively referred to as "Texas Valley Coastal Bend Health Care System".

9. At all times relevant to this complaint, the Texas Valley Coastal Bend Health Care System held themselves out to the Plaintiff as a provider of high quality health care services, with the expertise necessary to maintain the health and safety of patients like the Plaintiff.

10. At all times relevant to this complaint, the directors, officers, operators, administrators, employees, agents, and staff of Texas Valley Coastal Bend Health Care System were employed by and/or acting on behalf of the Defendant UNITED STATES OF AMERICA. Furthermore, the Defendant is responsible for the negligent acts of its employees and agents under the doctrine of *repondeat superior*.

11.     Jurisdiction is proper under 28 U.S.C. § 1346(b)(1).

12.     Venue is proper under 28 U.S.C. § 1402(b) in that the Plaintiff resides in the McAllen area of the Southern District of Texas.

### FACTUAL ALLEGATIONS

13.     On or about April 1, 2012, Plaintiff was examined by her primary physician, Dr. Gogia, Defendant's agent, due to her experiencing ongoing pain and prolonged excessive menstrual bleeding with clots.  Dr. Gogia referred the Plaintiff to Defendant's agent, Dr. Downing.  On or about April 25, 2012, Plaintiff Goldsmith, was then seen by Dr. Downing at the Texas Valley Coastal Bend Health Care System.  A sonogram was then ordered and performed on April 30, 2012, and the impression showed a fibroid located in the fundus of the uterus measuring 3.11 x 2.7 x 2.83 cm. Yet, despite said sonogram finding, Defendant's agent, Dr. Downing, called the Plaintiff about ten days later with the results and informed her that "the tests came back and everything in normal". To be clear, the Dr. Downing did not merely omit advising the Plaintiff of the fibroid; Dr. Downing actually misadvised the Plaintiff that she was normal when in fact she was not.

14.     Although the Plaintiff's bleeding and pain was unremitting, she could not get in for another appointment with her primary physician, Dr. Gogia, until approximately ten months later. On or about March 1, 2013, Plaintiff had a second appointment with Dr. Gogia, but there was no scan results from April 30, 2012 found in the Plaintiff's record.  Later, **once the scan was located, Dr. Gogia was the person who then advised the Plaintiff of the fibroid**.  **On or about March 1, 2013 is when the Plaintiff first discovered that she had a fibroid and that Dr. Downing had indeed misinformed her approximately ten months earlier.**  Based on the images, history of remitting menorrhagia, dysmenorrhea and presence of a fibromyomata in the fundus of the uterus,

Dr. Gogia wrote an order for consultation with an OBGYN Specialist.

15. The Plaintiff then later visited with the OBGYN Specialist. The OBGYN Specialist had another scan performed, and found that the fibroid had approximately **doubled in size since the first scan was made**. He also determined that some of the menstrual discharge could be caused by polyps in the lining of the uterus, and therefore performed a Dilation and Curettage (D&C) with hysteroscopy to determine the presence or absence of polyposis. Polyps were found and removed. However, postoperatively, the bleeding continued. The conclusion was that the symptoms most likely originated from the presence of the fibroid, which is a benign leiomyoma, known to produce the symptoms observed in the Plaintiff.

16. The lesion having approximately doubled in size limited the options to both eliminate the cause of the Plaintiff's symptoms and preserve fertility. Due to the delay in addressing the fibroid until it had significantly enlarged, Plaintiff Goldsmith had to undergo major surgery (with abdominal incision) to remove it, with a resulting large abdominal scar. Plaintiff has been informed that if the fibroid recurs, it will necessitate a hysterectomy, thereby rendering her infertile. Had it been possible to treat the fibroid at $\geq$ 3cm, the tumor might have been removed laparoscopically, with smaller (2 inch average) incisions, which is minimally invasive.

17. Additionally, Plaintiff has had to endure emotional and physical trauma due to the extended time she suffered from the pain and bleeding of the fibroid, the effects of the surgery and scarring, and a sense of impending doom for her future hopes of having a baby.

18. Subsequent to the above events and occurrences, in an undated letter address to the Plaintiff, the Chief Medical Officer and Chief of Staff for the Texas Valley Coastal Bend Health Care System, both apologized to the Plaintiff for the Defendant's failure to timely provide the results

of the scan of April 2012.

## NEGLIGENCE

19. Plaintiff Goldsmith realleges and reincorporates each and every allegation above as if fully set forth herein.

20. The Defendant had a duty to provide ordinary care, and to exercise that standard and degree of care and skill required of health care providers, consistent with the expertise that the Defendant presented to the community at large.

21. The Defendant breached its duty of care to Mrs. Goldsmith by:

   a) failing to timely diagnose and treat Plaintiff's fibroid condition;

   b) mishandling and misplacing Plaintiff's records and reports;

   c) failing to advise the Plaintiff of her examination results in a timely fashion; and

   d) misrepresenting to the Plaintiff that her condition was normal when it was not normal

22. As a direct and proximate result of Defendant's negligence, Plaintiff Goldsmith sustained the following damages:

   a) past physical pain and suffering

   b) past mental anguish and distress

   c) future mental aguish and distress

   d) past physical disfigurement (scarring)

   e) future physical disfigurement (scarring)

   f) past physical impairment (loss of enjoyment of life)

g) future physical impairment (loss of enjoyment of life)

23. The Defendant is liable pursuant to 28 U.S.C. 1346(b)(1), and the acts and/or omissions set forth above would constitute a claim under the law of the State of Texas.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Wimolwan Goldsmith, does hereby pray that judgement be entered in her favor and against the Defendant as follows:

1) Compensation for the above-described damages not to exceed the greater of $500,000 (as prayed for administratively) or that amount allowed by law and within the jurisdiction of the Court; and

2) Costs and attorneys fees incurred in this civil action, together with such further and additional relief at law or in equity that this Court may deem proper.

Respectfully submitted,

By: /s/ **Reynaldo M. Merino**
Reynaldo M. Merino
Texas Bar No. 13953250

LAW OFFICE OF REYNALDO M. MERINO
1012 Martin Ave., Suite B
McAllen, Texas  78504
Tel. (956)630-2000
Fax. (956)618-2800
E-Mail: reymerino@msn.com

Attorney for Plaintiff
WIMOLWAN GOLDSMITH